The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Edward Garner, Jr., the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Edward Garner, Jr.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which the parties entered into the record as:
 STIPULATIONS
1. An employee-employer relationship existed at the time of the alleged injury by accident.
2. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged accident.
3. Defendant Skinner Warehousing/Phoenix Packaging, Inc. was a duly qualified self-insured for workers' compensation purposes with Key Risk Management Services as the servicing agent.
 ***********
Based upon all of the competent evidence of record, the undersigned makes the following:
 FINDINGS OF FACT
1. Plaintiff is a high school graduate, who was employed as a maintenance man and forklift driver for defendant-employer.
2. While working on August 1, 1995, plaintiff alleges that he suffered an injury by accident when he fell from a ladder.
3. A hearing was held with regard to that incident on August 9, 1999, before Deputy Commissioner Bain Jones. On October 29, 1999, Deputy Commissioner Jones ruled that the claim was barred by N.C. Gen. Stat. § 97-24 as more than two years had elapsed between the final payment of medical compensation on April 23, 1996 and the filing of the Form 18 on or about November 12, 1998 for benefits related to that injury. Deputy Commissioner Jones also found that defendants were not equitably estopped from raising the statutory bar. On appeal by plaintiff, the Full Commission affirmed the Opinion and Award of Deputy Commissioner Jones. Per the Full Commission's Opinion and Award of May 3, 2000, plaintiff is not entitled to receive any workers' compensation benefits of any kind with regard to the August 1, 1995 incident and its consequences.
4. After reporting the alleged incident, defendant directed plaintiff to Primecare of Northpoint, where plaintiff stated he had fallen from a ladder onto his back and hit his head. He denied any loss of consciousness. Plaintiff was diagnosed with cervical and lumbar strains and released to return to work. After plaintiff continued to complain of headaches at a follow-up visit to Primecare, a CT Scan was taken on September 8, 1995, and it was normal.
5. Plaintiff did not seek medical treatment again for over nineteen months until on April 21, 1997, when he reported to Forsyth Memorial Hospital with a history of having a syncope episode two weeks earlier. He was thereafter referred to Dr. G. Frank Crowell, a neurologist in Winston-Salem, who examined plaintiff on April 23, 1997. Plaintiff related to Dr. Crowell that he had fallen from a ladder two years earlier and had severe headaches for a short time, but that eventually his headaches resolved and he was in his normal health without complaining until three weeks earlier when he had a sudden "pop" and severe sharp pain in the occiput followed by an incapacitating headache for about 30 minutes. Two syncopal episodes followed. Dr. Crowell suspected an aneurysm, ordered additional testing (a CT Scan done 2 days earlier was normal) and wrote plaintiff out of work. Until this point, plaintiff had not missed any work since August 1995 for a work injury or any other reason. Despite being taken out of work, plaintiff continued to fall and reported to Forsyth Memorial on April 29, 1997 that he had fallen four times recently at home and once hitting his head on a table.
6. Plaintiff was assessed by Dr. Kenneth Haisty, a cardiologist, for a possible cardiac etiology for plaintiff's condition on May 13, 1997. On this occasion, plaintiff again related a history of recurrent syncope with headaches since April 18, 1997. Plaintiff stated that he had headaches after falling from a ladder two years earlier, but that those headaches resolved until the first part of April when plaintiff felt that something snapped in the back of his head and he had had recurrent headaches since then. Dr. Haisty suggested further testing, but the record reveals that plaintiff refused the testing. Dr. Crowell released plaintiff to return to work on May 21, 1997.
7. Subsequently, plaintiff continued to experience blackout spells with increasing frequency thereafter. On June 10, 1997, he reported to Dr. Folds that he was passing out "a lot," including once that day. On October 24, 1997, plaintiff reported to Dr. Hilton two other falls, one in a workshop when he hit his head, and another through a storm window cutting both forearms. Dr. Hilton further noted that plaintiff had reported between 25 to 30 of these spells.
8. At the hearing in the instant matter, plaintiff testified that on October 30, 1997 he had a blackout spell that caused him to fall at work. At that time, he was on the dock and testified that he fell and struck his head and right elbow. There is no mention of any facial or head injuries in the records from that visit. The physician indicated swelling at the right elbow and x-rays were taken.
9. Plaintiff attributed the cause of his fall to the blackout spells, which pre-existed that date of incident. He did not relate the fall to any task he was performing at work that day. He simply just happened to be at work when the blackout episode occurred.
10. As a result of the increase in his falls dating back several weeks/months, when plaintiff began treating with Dr. Stephen M. Kirkland, a cardiologist, he reported that was passing out more. Dr. Kirkland thought plaintiff's syncope might be a cardiac dysrhythmia and removed plaintiff from work beginning on November 5, 1997. However, Dr. Kirkland was unable to determine the etiology of plaintiff's condition.
11. Plaintiff returned to Dr. Crowell on December 8, 1997, who indicated that plaintiff had continued to have blackouts since he last saw him in the spring. Plaintiff did report a recent history of some improvement with no syncope for a period of two weeks until two episodes just prior to that visit. Over the next few visits, Dr. Crowell treated plaintiff for a suspected seizure disorder by prescribing Dilantin. Dr. Crowell released plaintiff to return to work on January 7, 1998.
12. Plaintiff continued to work thereafter until May 18, 1998. Dr. Crowell was still treating plaintiff for seizures, but was concerned that plaintiff had not reached therapeutic levels of medication. Neurological consults were obtained over the next several months with Dr. William O. Bell, Dr. C.A. O'Donovan, and Dr. Edward Hill. Dr. Bell thought plaintiff was having epileptic seizures. Dr. O'Donovan considered vasovagal syncope versus pseudoseizures.
13. On October 2, 1998, Dr. Hill examined plaintiff and thought he had vascular type headaches as a result of the August 1995 incident at work. Until that date, over three years from the alleged fall at work, no physician had ever opined that plaintiff's syncope episodes were somehow related to headaches associated with the work injury. However, Dr. Hill acknowledged that his opinion as to causation was based on several assumptions based upon the history provided to him by plaintiff: that plaintiff lost consciousness for a short period of time following the 1995 fall; that the episodes of syncope and headaches had begun immediately thereafter; and that plaintiff had not experienced any episodes of headaches and/or dizziness prior to that 1995 fall.
14. By the greater weight of the medical evidence, Dr. Hill's assumptions about what actually occurred following the 1995 fall are inaccurate and are given little weight. Dr. Hill acknowledged that the biggest etiology for vascular type headaches was idiopathic, especially if there was a year and one-half gap between the fall and onset of syncope.
15. Plaintiff's fall at work on October 30, 1997 was the result of a pre-existing, idiopathic condition and was in no way related to his employment.
16. While Dr. Hill testified that any of the subsequent falls could aggravate plaintiff's condition (assuming that plaintiff were to hit his head), he also testified that it was impossible to know which fall or falls might have caused any such aggravation. Neither Dr. Hill nor Dr. Crowell were aware of the October 30, 1997 fall until being informed of it at their depositions in this case.
17. In plaintiff's discovery responses provided in association with the claim for the 1995 injury, he indicated that he had had no other accidents after August 1, 1995 except those falls relating to his blackouts as a result of that incident and did not claim any worsening of his condition as a result of any of those falls in particular.
18. In light of the greater weight of the medical evidence, and the Deputy Commissioner's opportunity to observe plaintiff at the hearing, the Full Commission concurs with the deputy Commissioner and gives no weight to plaintiff's testimony regarding the worsening his condition after the October 29, 1997, incident at work.
19. Plaintiff did not suffer a material aggravation of his pre-existing condition in the incident at work on October 29, 1997.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's falling incident at work on October 29, 1997 was caused by an idiopathic condition and did not arise out of his employment. Colev. Guilford County, 259 N.C. 724, 131 S.E.2d 308 (1963).
2. Plaintiff has failed to prove that the falling incident at work on October 29, 1997, materially aggravated his pre-existing, idiopathic condition. Anderson v. Northwestern Motor Company, 233 N.C. 372,64 S.E.2d 265 (1951).
3. Per the Full Commission Opinion and Award of May 3, 2000, plaintiff is not entitled to receive any workers' compensation benefits of any kind with regard to the August 1, 1995 incident and its consequences.
 ***********
Based on the foregoing findings of facts and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
This 8th day of November 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ LAURA K. MAVRETIC COMMISSIONER